MAY BAITZEL, Respondent, *v.* THOMAS J. OAKLEY RHINE-LANDER and PHILIP RHINELANDER, Appellants.

First Department, November 9, 1917.

Landlord and tenant — action to recover damages for constructive eviction — alleged breach of covenant of quiet enjoyment caused by rain water and backing up of sewage — when payment of rent prerequisite to suit for breach of covenant — failure to excuse non-payment of rent — when landlord not bound to make repairs — reservation by landlord of access to make repairs not equivalent to covenant to do so — pleading — reply — counterclaim to claim for rent.

A tenant who has failed to pay rent cannot recover damages from her landlord, claimed to have been caused by a constructive eviction owing to the fact that dampness and rain water permeated the walls and

sewage backed up in a courtyard in times of heavy rain, unless she has excused her failure to pay rent.

A tenant who has failed to pay rent cannot recover for a breach of her landlord's covenant for quiet enjoyment without first excusing her own default.

A failure to pay rent is not excused on the theory that the landlord discharged waters from other premises upon the demised premises where the evidence shows that no water fell upon the plaintiff's premises save such as was discharged from the heavens.

Nor is the failure to pay rent excused by the contention that the landlord allowed the walls and roof of the premises to become in disrepair if the lease contained no provision whatever requiring the landlord to make repairs.

*It seems,* moreover, that even if the two foregoing excuses were valid and supported by the evidence they did not excuse a failure to pay rent, for a covenant of quiet enjoyment and a covenant to repair are independent covenants and a breach thereof by the landlord is no excuse for a tenant's failure to pay rent while she remains in possession.

The failure to pay rent is not excused by a clause annulling the lease if the premises became wholly unfit for occupancy by reason of fire, water, action of the elements or partial destruction, as there was no destruction of the premises either by fire or the elements.

The landlord is not responsible for alleged injury to the plaintiff's goods caused by the backing up of water from the city sewer in times of heavy rain, for the landlord had no control of the situation and the responsibility, if any, lies with the municipality.

A provision in a lease giving the landlord right of access to make repairs for the safety or preservation of the building as he may deem necessary cannot be enlarged by construction into a covenant to make repairs.

*Held,* that a judgment for the plaintiff should be reversed and a judgment for rent due directed in favor of the defendant.

A tenant in a reply to a landlord's counterclaim for rent cannot set up a counterclaim for damages chargeable against rent.

APPEAL by the defendants, Thomas J. Oakley Rhinelander and another, from a judgment of the Supreme Court in favor of the plaintiff, entered in the office of the clerk of the county of New York on the 7th day of December, 1916, upon the verdict of a jury, and also from an order entered in said clerk's office on the 29th day of November, 1916, denying defendants' motion for a new trial made upon the minutes.

*Howard Hasbrouck,* for the appellants.

*Richmond Weed,* for the respondent.

DOWLING, J.:

The plaintiff has recovered a judgment in the sum of $4,270 for the damages claimed to have been sustained by her as the result of her constructive eviction from premises leased by her from the defendants. On July 29, 1913, plaintiff hired from the defendants under an instrument in writing the most easterly store in the building No. 66 West Thirty-eighth street, borough of Manhattan, city of New York, and the one-story building with the basement thereunder in the rear of Nos. 66-68 West Thirty-eighth street, to be used and occupied by her as a restaurant, lunch room and tea room for a period of five years, beginning September 1, 1913, at a yearly rental of $1,800, payable in equal monthly installments in advance on the first day of each month. The landlords reserved the right to cancel the lease at any time after September 1, 1916, on giving ninety days' notice, whereupon the tenant should have the last three months' use of the premises free of rent. Before signing the lease the plaintiff examined the premises. They were of rather unusual construction, as the store referred to in the lease is a narrow one, about six feet wide, which was used for the purpose of ingress into the rear building occupied entirely by the plaintiff, which comprised a room on the same level as the store, used by her as the dining room, and a lower floor on a level with the courtyard, called the basement, used by her as a kitchen and storeroom. There was a doorway from the basement into this courtyard, but the courtyard itself was not included within the terms of the lease, although she had used it to store an ice cream box and some other boxes and rubbish therein. This rear building had been constructed by a prior lessee who had abandoned his lease, and the landlords had completed the erection of the building on a smaller scale as to height than was originally intended. The rear building was constructed from second-hand brick, and its walls were sixteen inches thick in the basement and twelve inches thick above, and poorly constructed. These walls were porous and in certain places permitted the dampness and rain to strike through. They were in this condition when the lease was signed. Plaintiff was the first occupant thereof. In the courtyard was a drain

or pipe connecting with the sewer in the street. There was no roof draining into this yard, the only water falling into the same being that which came directly from the heavens. Although plaintiff's lease did not begin until September 1, 1913, she had the free use of the premises during August, while preparing for the opening of her business, and in that time she installed the equipment thereof and did certain painting, papering and improving of the interior. On September 4 and 5, 1913, and before plaintiff had opened her place of business to the public, there was a severe storm in New York city, as the result of which there is evidence that the water backed up from the street sewer into the courtyard or areaway referred to and thence flowed into the kitchen of the rear building through the doorway between it and the court. At that time the water also seeped through the walls of the dining room and trickled down and came through the ceiling of the dining room and the skylights. Plaintiff remained in possession of the premises and opened the same to the public on September 9, 1913, and continuously maintained and prosecuted her restaurant business therein until July 2, 1914. During that time, with the exception of the fact that the skylights no longer leaked, the same conditions as to seepage of water through the walls of the dining room existed whenever a storm occurred, which happened about a dozen times during plaintiff's occupancy of the premises. After all those storms the dining room, it is testified here, smelled musty and damp and there would be an odor of sewage lasting for a couple of days, although the backing up of the water from the sewer did not occur after every storm but only after very severe ones. On July 1, 1914, after the plaintiff had been in possession of the demised premises for ten months, another storm took place, which concededly was not as severe as the storms of the preceding September and October of which plaintiff complained, and on the following day plaintiff refused to open her place of business and began to remove her effects therefrom, eventually abandoning the premises on July sixth. At this time she was in arrears for rent for the months of May, June and July, 1914, amounting to $450. Plaintiff claims that her profits from the business during the time of her occupancy of the premises were $1,800. This action

was begun to recover the damages which she claimed to have sustained by reason of her constructive eviction from the demised premises, it being her contention that by the acts of the landlords her further occupancy had been rendered impossible.

In the original complaint the plaintiff alleged that she had duly performed all the conditions on her part prescribed by said lease up to the time that she was forced to abandon the premises. By her amended complaint she admitted that she had not paid the rent for the three months in question, but pleaded as an excuse for not so doing, *First*, that the defendants had unlawfully discharged water from other premises owned by them upon the leased premises and negligently allowed the walls, roof and skylight of the demised premises to be in disrepair; *second*, that the demised premises were injured by storm and rain and by the action of the elements and thereby became unfit for occupancy, and that the defendants failed to repair the same although called upon so to do, and *third*, that the defendants failed to keep the premises in a proper condition for occupancy and thereby violated the 11th clause of the lease between them, which is the covenant of quiet enjoyment.

This action is brought for a constructive eviction based upon the alleged breach of the covenant of quiet enjoyment which is contained in the paragraph of the lease marked 11th, and reads as follows: " The landlord further covenants that the tenant on paying the said yearly rent as hereinabove provided, and faithfully and fully keeping and performing the conditions and covenants herein contained, shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid."

In *Meyer* v. *Schulte* (160 App. Div. 236; affd., without opinion, 213 N. Y. 675) this court affirmed the judgment upon the opinion of Mr. Justice PAGE at Trial Term, that case having been tried by the court without a jury. In that opinion so adopted by this court it was said: " But if it were conceded that plaintiff as assignee assumed the position of landlord to the defendants, I am still of the opinion that the defendants could not recover on their counterclaim, for the reason that they have not proved performance of the con-

First Department, November, 1917.       [Vol. 179.

ditions precedent to their recovery. In their lease the defendants covenanted to pay $1,250 per month rent in advance, on the first of each month, and the lease provides: ' And the said landlord doth covenant that the said tenant on paying the said yearly rent, and performing the covenants aforesaid, shall and may peaceably and quietly have, hold and enjoy the said demised premises for the term aforesaid.' It is conceded that the defendants failed to pay the rent for over six months prior to their eviction. A fair interpretation of the lease leads to the conclusion that the payment of this rent in advance was the consideration for and the condition precedent to the plaintiff's covenant for quiet enjoyment. The defendants, having broken that condition, cannot recover on their covenant." Therefore the plaintiff cannot recover upon the covenant of quiet enjoyment unless she has excused her failure to perform the covenants upon her part to be performed. She has sought to do this by reason of the three excuses above set forth. Neither of these is a valid answer to her conceded breach of the covenant to pay rent, which was a condition precedent to her right to insist upon the covenant of quiet enjoyment. The first contention, that water was discharged by the landlords from other premises owned by them upon the demised premises, is not supported by the testimony. On the contrary, it is proved satisfactorily that no water fell upon the plaintiff's premises save such as was discharged from the heavens, and that none of the defendants' other premises discharged water either upon her premises or into the courtyard in front thereof. As to the second contention, that the landlords allowed the walls, roof and skylights of the demised premises to become in disrepair, the answer is that the lease contains absolutely no provision whatever by which the landlords obligated themselves to make any repairs whatever upon the demised premises. Even if both these excuses had been valid ones and supported by the testimony, they would not have furnished an excuse for failure to pay rent. They were, if established, breaches by the defendants of their covenant of quiet enjoyment, and the second would have been, as well, a breach of a covenant to repair had one existed; but it is well settled that such breaches of covenant by a landlord are breaches of an inde-

pendent covenant which afford no excuse for a refusal or failure
to pay rent. While the tenant remains in possession he must
pay his rent or move out, unless he has sustained damage by
reason of a breach of the defendant's covenant to do a par-
ticular thing (e. g., to introduce electric current into the
demised premises), in which case he can counterclaim the
damages in an action brought by the lessor to recover the
rent, or he can bring an independent suit to recover such
damages. (*Thomson-Houston Electric Co.* v. *Durant Land Imp.
Co.*, 144 N. Y. 34; *Jacob* v. *Thompson*, 73 App. Div. 224;
*Drago* v. *Mead*, 30 id. 258; *Henning* v. *Savage*, 51 Misc.
Rep. 609.) As to the third excuse offered for plaintiff's failure
to perform her covenants, she relies therefor upon the 5th
clause of the lease covering cases where the premises demised
are destroyed by fire, water, action of the elements, or par-
tially destroyed so as to render the premises demised wholly
unfit for occupancy, and providing that if they are so badly
injured that they cannot be repaired within sixty days from
the happening of such injury the lease shall cease. As there
was no destruction of those premises either by fire or the
elements, the condition which the plaintiff claims does not
come within this clause of the lease.

The plaintiff has utterly failed to prove that her premises
were in any way damaged or affected by any water discharged
thereupon from defendants' other property. The only condi-
tion which is established is that which existed in the basement
of her premises where her kitchen and storeroom were main-
tained. The flow of water into the basement of her premises,
with the consequent smell of sewage and dampness, together
with the damage claimed to have been done to her supplies
in the storeroom in the basement, are chargeable directly
to the backing up of the water from the city sewer, a condition
over which the defendants had no control and for which they
were in no way responsible. If any responsibility for that
condition could be charged against any one, it must be against
the municipality which maintained the sewers, and to hold
even it responsible very much more proof would be required
than exists in this case. There is no proof of any trespass
on the part of the defendants nor any negligence by them
which in any way contributed to plaintiff's damage, and

I can find no theory advanced by the plaintiff which is tenable upon which liability can attach to these defendants. Plaintiff leased these premises after inspecting them and when they were in the same condition as when she entered into their possession. Her business was conducted continuously therein and she was never obliged to suspend operations even for a single day, despite the inconveniences which she claims she sustained after these storms. She retained possession for ten months, during which time some fifteen storms occurred, all of which, as she claims, affected both her and her business injuriously, despite which she continued paying rent for seven months, and did not abandon the premises under a claim of constructive eviction until after a storm had occurred, which concededly was less severe than at least three storms in the first two months of her tenancy. Realizing that defendants' liability for breach of the covenant of quiet enjoyment must be based upon some act of omission or commission upon the part of the defendants in violation of the terms of the lease, and having failed to prove either trespass or negligence, plaintiff finally contends that they breached an agreement to repair. But nowhere in the lease will any express covenant to repair be found, and a general provision, such as occurs in the 7th paragraph of the lease in question, giving the landlord the right of access to the demised premises to examine the same or make any repairs for the safety or preservation of the building that he may deem necessary, cannot be enlarged by construction into a positive promise to do something which he was only given the right to do if he wished to do it. (*Witty* v. *Matthews,* 52 N. Y. 512; *Richmond* v. *Lee,* 123 App. Div. 279; *Castagnette* v. *Nicchia,* 76 id. 371.) A careful review of the entire record discloses no breach of any covenant made by the defendants with the plaintiff, and she, therefore, cannot recover any damages from them herein. On the other hand, the defendants are entitled to a judgment on their counterclaim in the sum of $1,023.50, being the rent of the premises demised from May to October, 1914, at which latter time a new lease thereof was made to one Martin. The plaintiff has not established any damages which could be properly charged against this rent. Nor could the plaintiff establish such

damages under the form of her pleading herein. Such damages must be pleaded as a counterclaim against the balance due for rent, and as her statement thereof is contained in her reply, no counterclaim could be properly included therein. (Code Civ. Proc. § 514.)

It follows, therefore, that the finding of the jury that the plaintiff was constructively evicted from the premises in question by reason of defendants' breach of their covenant of quiet enjoyment in the lease thereof must be reversed. The judgment and order appealed from will be reversed, with costs, and judgment directed in favor of the defendants on their counterclaim in the sum of $1,023.50, with costs.

CLARKE, P. J., SCOTT, SMITH and PAGE, JJ., concurred.

Judgment and order reversed, with costs, and judgment directed in favor of defendants on their counterclaim in the sum of $1,023.50, with costs. Order to be settled on notice.