Bernard S. Meyer, J.
Plaintiff tenant asks a judgment declaring its rights under certain provisions of its lease with defendant landlord. A summary proceeding for nonpayment and for attorneys ’ fees begun in the District Court by defendant was ordered transferred to this court for joint trial with plaintiff’s action. Plaintiff’s complaint alleges six causes of action, but the third was discontinued and the fourth dismissed during trial. There remain for decision the first cause of action which asks a declaration concerning the obligations of the parties with respect to repairs; the second cause of action which seeks damages for the diminution in rental value by reason of defendant’s failure to make certain repairs; the fifth, which asks a declaration concerning the meaning of paragraph 37th with respect to real estate taxes; the sixth, which seeks judgment for overpayments under the tax clause; and the nonpayment proceeding. During the pendency of the action plaintiff has, pursuant to court order, been paying the monthly rent to its own attorney as escrow agent. After trial before the court *503 without a jury, judgment will be entered construing the repair and tax clauses as hereinafter set forth, dismissing the second and sixth causes of action, and with respect to the summary proceeding, directing that defendant recover from the escrow agent the entire escrow fund, but dismissing so much of the summary proceeding as demanded attorneys’ fees. The judgment may provide that, should the escrow agent fail to pay over said fund within 10 days after service upon him of a copy of the judgment with notice of entry, application may be made at the foot of the judgment for a warrant of eviction.
The lease between the parties, made June 11, 1969, was for a term of five years commencing July 1, 1969 at an annual rent of $9,000. The demised premises are described as ‘ ‘ approximately 5600 square feet of space in the building known as 74 Alabama Avenue, Island Park, New York ”, but it is undisputed that the only building on the premises is a one-story cinder block and cement building on a concrete slab, originally described in the building plans as a commercial warehouse and that the tenant is the sole occupant of the building and plot.
Turning first to the repair questions raised by the first and second causes of action, the court notes that the lease states that the “ Premises are leased ‘ as is ’ ” and requires (par. 2d) “ That the Tenant shall take good care of the premises and shall, at the Tenant’s own cost and expense make all repairs (see ‘ Repair ’ clause in Rider) and at the end * * * of the term, shall deliver up the demised premises in good order or condition, damages by the elements excepted.” This provision is followed by the usual printed provision requiring the tenant to comply with governmental orders ‘ ‘ for the correction, prevention, and abatement of nuisances or other grievances, in, upon, or connected with said premises during said term.” The rider provision referred to earlier in the lease as the “ Repair ” clause states (par. 34th) that “ Notwithstanding any of the provisions herein, Tenant shll [shall] make any all [sic] interior repairs to the demised premises * * * at Tenant’s own cost and expense. However, Tenant shall not be responsible and liable for making any major structural repairs or repairs to the roof, unless same become reasonable and necessary by reason of Tenant’s operation of Tenant’s business or by reason of negligence of the Tenant.”
The tenant went into occupancy one week before the commencement of the term on July 1, 1969. On July 28, five weeks after taking possession of the premises, the tenant’s attorneys wrote the landlord complaining “ of the following structural *504 deficiencies in the walls and roof of said building which must be corrected immediately to avoid damage to my client’s property and equipment and to render the premises useable * * *
‘ ‘ 1. The two cinder block side walls of the building are leaking and require waterproofing * # *
“2. The rear cinder block wall has openings in between the cinder blocks which permit water to enter the premises, as well as air * * *
‘ ‘ 3. The roof of the premises leaks in several locations which are evident by rust spots on the interior, and may cause serious damage.”
Immediate attention to the complaint was requested “ so that my client may have ‘ quiet enjoyment ’ of the premises for his business purposes.”
Although the landlord took no action then or thereafter to adjust these complaints, the tenant continued in possession of the premises and paid rent as required by the lease, including amounts (now disputed) on account of real estate taxes, until September 1, 1971. By letter of plaintiff’s attorney dated August 30, 1971 the tenant again complained and on September 7,1971, the landlord requested an appointment to visit the building ‘ ‘ to inspect the condition of cracks in the wall which you claim exists.”
Finally, the tenant, still in possession of the premises, commenced this action on October 14, 1971. Within two weeks, at the instance of the tenant, there was an inspection of the building by an inspector for the Department of Buildings of the Town of Hempstead who on October 29, 1971, issued a note of violation requiring “ repair [of] masonry and slab conditions at 74 Alabama Ave ” pursuant to section 27 of article 86 of the Town Ordinance which is entitled “ Unsafe buildings.” Despite the caption, it must be presumed that there is no ‘ ‘ actual and immediate danger of failure or collapse so as to endanger life ” (art. 86, § 27, subd. D.), since no order requiring that the building ‘ ‘ be vacated forthwith and not reoccupied until the specified repairs and improvements are completed,” has been made nor has the building been posted as unsafe (ibid.); nor is there any proof of such “ danger of failure or collapse.”
While the harshness of the common law with respect to landlord and tenant has been ameliorated somewhat as to residential property by statute, it is still the law as to commercial property that, in the absence of proof of fraud or of a covenant by the landlord, a landlord does not represent that the premises' are tenantable or usable for the intended use (Welson v. Neujan *505 Bldg. Corp., 264 N. Y. 303, 305; Franklin v. Brown, 118 N. Y. 110, 113; Potter v. New York, Ontario & Western Ry. Co., 233 App. Div. 578, 581), nor, absent an express agreement on his part to do so, is a landlord required to make any repairs to the leased premises (Potter v. New York, Ontario & Western Ry. Co., supra; Baitzel v. Rhinelander, 179 App. Div. 735; Richmond v. Lee, 123 App. Div. 279).
Plaintiff makes no claim of affirmative misrepresentation by the landlord; its sole contention as to fraud is that the landlord knew prior to the execution of the lease of the conditions of which plaintiff complains ‘ ‘ but rented the same to the plaintiff without notifying or informing plaintiff of such condition ’ ’. Plaintiff’s president admits, however, that he examined the premises a few days before he signed the lease and observed cracks above the windows and that he discussed with his attorney the “ as is ” clause and understood that he was taking the building in the condition that he saw it. He says that the walls up to the window level were covered with materials belonging to the then occupant of the premises, but offers no evidence that defendant had anything to do with the placing of the material, or that he sought to have any part of it moved so that he could make a closer inspection at the points where cracks were visible above the windows or that he made any effort to examine the exterior of the building. Fraudulent concealment of a hidden defect may warrant a tenant in abandoning rented premises and thus relieving himself of the obligation for the rent (Ash v. Meeks, 134 App. Div. 154; see Daly v. Wise, 132 N. Y. 306), but the evidence in this case does not sustain a finding of fraudulent concealment by defendant (cf. Daly v. Wise, supra), or of reliance by plaintiff, and in any event plaintiff has never abandoned the premises.
When one turns to the provisions of the lease, plaintiff fares a little better. Plaintiff’s obligations to repair are determined by paragraphs 2 and 34, which require tenant to make 1 ‘ all repairs ” and “ all interior repairs ” other than “ major structural repairs or repairs to the roof ” unless the latter result from tenant’s operations or fault. The defects in issue are cracks in the walls coursing along the lines of the cinder blocks above the lintels and below window openings, separation of the floor slab from the wall along the east wall to a sufficient distance to permit swamp grass to intrude, deterioration of sills and wood trim. In 1969 there was also a claim that the roof leaked, but the testimony did not establish that as a present complaint. All of the conditions complained of having existed *506 when the lease began, they could not have resulted from tenant’s operation or fault. Whether they are the tenant’s obligation turns, therefore, on whether they constitute major structural repairs.
A structural change or alteration has been defined as “ such a change as to affect a vital and substantial portion of the premises; as would change its characteristic appearance; the fundamental purpose of the erection; or the uses contemplated, or a change of such a nature as would affect the very reality itself, extraordinary in scope and effect, or unusual in expenditure ” (Pross v. Excelsior Cleaning & Dyeing Co., 110 Misc. 195, 201; quoted with approval in Wall Nut Prods, v. Radar Cent. Corp., 20 A D 2d 125, 126). Clearly the deterioration of the sills and trim is not a structural repair, let alone a major structural repair. Though cracks in the walls would be, if of such proportion as to require rebuilding of the walls, plaintiff’s evidence does not detail what the nature of the required repair is. It rests, rather, on the opinion of plaintiff’s expert that, since the walls hold up the roof, repairs to the walls are structural. The court does not accept that generality. If the cracks can be repaired by caulking or some similar step, as distinct from underpinning of the walls, the repair is not structural. Not every repair to a wall is necessarily structural, and plaintiff has failed to establish that the wall cracks of which it complains are major structural repairs within the meaning of the lease.
The separation of the slab from the wall does, however, require major structural repair, for the slab is part of the foundation of the building, and on the integrity of it and the walls on which rest the roof beams depends the continued stability of the roof. Nor is plaintiff’s duty in this respect increased by the lease provisions (pars. 3d and 34th) requiring the tenant to comply with governmental orders (Herald Sq. Realty Co. v. Saks & Co., 215 N. Y. 427; City of New York v. United States Trust Co., 116 App. Div. 349). As was said of this type of clause in the Herald Sq. ease (supra, pp. 431-432): “ The covenant which binds the defendant [tenant] to comply with ‘ all orders, notices, regulations and requirements ’ of the municipal and state authorities is broad and inclusive, it is true, but it is in the general form almost universally found in leases of urban real estate, and its obvious purpose is to relieve the owner from burdens that would naturally and legally fall on him unless, in accordance with common usage, the tenant is specially charged therewith. The matter in dispute is not of that char *507 acter. Here the tenant is sought to be charged with the expense of making an important and permanent structural change in the building occupied by him. This burden is one that of course falls upon the owner, and if it is to be shifted to the tenant the warrant for the change should be plainly discoverable in the lease.” (See, also, Ducker v. Del Genovese, 93 App. Div. 575.)
Plaintiff is, thus, entitled to a declaration that the slab repair is not its responsibility under the lease. That the lease is to be so construed does not, however, entitle plaintiff to damages for failure to make the repair. The difficulty is that the lease contains no express covenant by the landlord to make structural repairs. “ A landlord’s obligation to repair in any case rests solely on express covenant. Without an express undertaking to repair the demised premises, the lessor is neither bound to do so himself nor to pay for repairs made by the tenant ” (Figler v. Subin, 18 A D 2d 702, affd. 14 N Y 2d 740; Witty v. Matthews, 52 N. Y. 512, 514; Richmond v. Lee, 123 App. Div. 279, supra Castagnette v. Nicchia, 76 App. Div. 371). The principle is so firmly rooted, that where there is no express covenant by a lessor to make repairs of any character he has no obligation to comply with municipal orders affecting the premises (Gould v. Springer, 206 N. Y. 641, 647). The failure to comply with the Building Inspector’s notice of violation may subject the landlord to such redress as the municipality may seek but that is no concern of the tenant and gives it no right to compel action by the landlord (ibid.). Nor is plaintiff aided by the clauses of the lease granting the landlord permission to enter upon the premises “ for the purpose of examining the same, or making such repairs or alterations therein as may be necessary for the preservation and safety thereof ” and to remove signs when necessary to do so for painting and related purposes. Such clauses do not impose on the landlord the duty to make repairs; they “ simply give[s] permission to the landlord to inspect his premises and make such repairs as are necessary. It creates no duty upon him so to do, and the tenant could not require it to be done ” (Elefante v. Pizitz, 182 App. Div. 819, 821; Baitzel v. Rhinelander, 179 App. Div. 735, 742).
Moreover, even were the tenant’s contentions in the foregoing respects tenable, it would still be barred from any affirmative relief mandating performance by the landlord by its conduct in not pursuing its complaints made before the first month of the term expired and in continuing to pay rent until more than two years had elapsed despite the landlord’s inaction (cf. *508 Silverstein v. Empire State Shoe Co., 20 A D 2d 735; Electronic Corp. of Amer. v. Famous Realty, 87 N. Y. S. 2d 169, 172, affd. 275 App. Div. 859; Campbell v. Poland Spring Co., 196 App. Div. 331). Further, since it has not surrendered possession of any part of the premises there is no constructive eviction or actual partial eviction, and plaintiff’s obligation to pay rent has, therefore, continued (Matter of Byrne v. Padden, 248 N. Y. 243; City of New York v. Pike Realty Corp., 247 N. Y. 245, 247; Edgerton v. Page, 20 N. Y. 281; Pasqua v. De Marchi, 31 A D 2d 781; Baitzel v. Rhinelander, 179 App. Div. 735, supra). The obligation of the tenant to pay rent being independent of any obligation of the landlord to make repairs, it is no defense to an action for the rent, absent surrender of the premises (Real Property Law, § 227), that the landlord has not made the slab repair (see Baldwin v. Cohen, 132 App. Div. 87; Drago v. Mead, 30 App. Div. 258; Security Mtge. Co. v. Kallis, 102 Misc. 693, affd. 184 App. Div. 936). The landlord is, therefore, entitled to judgment for the rent held in escrow, but since it appears that the summary proceeding was brought after plaintiff’s action and offer to pay the rent into court, attorney’s fees will not be awarded.
The second cause of action, for breach of the covenant of quiet enjoyment, is not maintainable, however, since there has been no abandonment of the premises and there is no covenant by the landlord to perform specific repairs (Herstein Co. v. Columbia Pictures Corp., 4 N Y 2d 117, 121). In any event, damages for such a breach would be the difference between the rent reserved and the rental value of the premises in their present state (Thomas-Houston Elec. Co. v. Durant Land Improvement Co., 144 N. Y. 34), and there is a complete absence of proof on that score.
Accordingly, judgment will be entered on the first cause of action declaring that the tenant is not obligated to repair the slab separation but is obligated to make the other repairs complained of, dismissing the second cause of action, and awarding defendant judgment for the rent held in escrow as above stated.
Turning now to the question concerning the tax clause, the court notes that paragraph 37th of the lease reads as follows: “ Tenant shall pay in any year of the demised term, as additional rent, increased real estate taxes in the following manner: Landlord shall pay and [sic] and all real estate taxes for the real estate tax year 1969. In succeeding years of the term, Tenant shall pay the amount, if any, by which such real estate taxes increase over the taxes in said real estate tax year 1969.”
*509 The dispute concerns the school taxes on the property, which are levied for the period July 1 through June 30. Is the “ real estate tax year 1969 ’ ’ that which began July 1, 1968 and ended June 30, 1969, or that which began July 1, 1969 and ended June 30, 1970. The difference is important because the 1968/1969 taxes were $758.42, but increased in 1969/1970 to $1,504.84.
No evidence has been presented concerning negotiations about the clause, but the evidence does establish that on April 23, 1970 defendant forwarded to plaintiff a letter enclosing copies of the tax bills “for your base year 1968-69 showing tax of $758.42 and the current year 1969-70 showing tax of $1,504.84 ” and that plaintiff paid the $746.42 difference, that on June 11, 1971 defendant sent plaintiff a bill showing “ Current School Tax $1657.51 ” and “ Base School Tax $758.42 ”, and that plaintiff paid the $899.09 difference, and that plaintiff’s annual report of June 30, 1971 contains a note reading: “ The company occupies premises at 74 Alabama Avenue, Island Park, N. Y. under a lease expiring July 31,1974 with a rental of $9,000.00 per year plus increases in real estate taxes over base year 1968/1969.”
A tenant’s obligation to pay taxes on leased property “ rests solely upon the terms of the lease ” (Rensselaer & Saratoga R. R. Co. v. Delaware & Hudson Co., 168 App. Div. 699, 701, affd. 217 N. Y. 692). Moreover, additional liability will not be imposed upon a tenant unless clearly within the provisions of the lease, and any ambiguity will be resolved against the landlord and in favor of the tenant (Black v. General Wiper Supply Co., 305 N. Y. 386, 390).
Since the phrase “ real estate tax year 1969 ” is, as to school taxes, ambiguous, it would follow on the basis of the usual rules of construction that the base year was 1969/70 not 1968/69. Here, however, there are the added factors of the admission in the annual report and the practical construction placed upon the clause by the parties for two years. Plaintiff offers no other explanation of these factors than that it was in error and assumed that defendant’s demands were correct. It is familiar learning that in construing ambiguous language there is no better evidence of the parties ’ intention than their practical construction of an agreement, and that rule applies as well to the construction of a tax clause in a lease as to any other contract provision (Manning Realty Corp. v. Topping Bros., 120 Misc. 592, affd. 207 App. Div. 852). It follows that the sixth cause of action must be dismissed and the fifth cause of action resolved by a declaration that the base year for school taxes under paragraph 37th of the lease is the school tax year 1968-1969.