449 So.2d 852 (1984)
The CITY OF ST. PETERSBURG, Florida, Appellant,
v.
COMPETITION SAILS, INC., Appellee.
No. 83-1313.
District Court of Appeal of Florida, Second District.
March 21, 1984.
Rehearing and Clarification Denied May 9, 1984.
*853 Michael S. Davis, City Atty., and Kim Streeter, Asst. City Atty., St. Petersburg, for appellant.
Steven T. Northcutt of Levine, Freedman, Hirsch & Levinson, P.A., Tampa, for appellee.
GRIMES, Acting Chief Judge.
The City of St. Petersburg as appellant-lessor seeks review of a judgment requiring that it immediately commence repair work on the roof of certain leased premises and that it provide appropriate dock space for Competition Sails, Inc., the appellee-lessee. Since the trial court has retained jurisdiction over several unresolved issues, we have chosen to treat this case as an interlocutory appeal from a mandatory injunction under Florida Rule of Appellate Procedure 9.130(a)(3)(B). See Allstate Insurance Co. v. Arvida Corp., 421 So.2d 741 (Fla. 4th DCA 1982).
Competition Sails entered into a lease with the former owner, Allen Marine Repair and Services, Inc., for the rental of a building in downtown St. Petersburg. Under its terms, Competition Sails was to lease the premises for a period of fifteen years with the option to renew the lease for two additional five-year terms. At the time Allen Marine also owned a second piece of property across the street from the leased premises which had adjacent docking facilities. Pursuant to the lease, Competition Sails was permitted to utilize the dock on a nonexclusive basis in the operation of its business. Allen Marine later sold the rental property to the city, subject to the lease with Competition Sails.
When Competition Sails first moved into the building in 1974, it experienced minor water leaks from the roof. Allen Marine responded by making repairs on several occasions. The city also made roof repairs on two or three occasions after it purchased the building in 1976. Notwithstanding, the leaking became worse as the building continued to deteriorate. In addition, the city also acquired Allen Marine's property across the street and demolished the docking facilities in order to construct a waterfront museum.
Thereafter, Competition Sails filed suit against the city for specific performance of the terms of the lease. Following a nonjury trial, the court ruled that the city was obligated to repair the roof and to provide the promised dock space or comparable docking facilities at another convenient location.
At the outset, it is important to note that this case involves a commercial lease. Therefore, the statutory obligations placed upon Florida landlords who lease residential premises are inapplicable. See § 83.51, Fla. Stat. (1981). The portions of the lease pertinent to roof repairs are as follows:
TWENTY-FOURTH: The Lessee covenants and agrees that it will maintain the leased premises, plumbing, wiring, heating and air-handling units, hot-water tanks and all other appurtenances in connection with the leased, hired and rented premises during the pertinency of this lease, or renewals thereof, except for the exterior of the leased premises and the roof. All glass shall expressly be maintained by the Lessee.
THIRTIETH: The Lessee covenants and agrees that the Lessor shall not be liable for any damage occasioned by failure to keep said premises in repair, except from damages caused by the failure to keep said premises in repair where required to do so under the terms of this lease, and shall not be liable for any damage done or occasioned by or from plumbing, gas, water, steam, or other pipes or sewage, or the bursting, leaking or running of any cistern, tank, washstand, water closet or waste pipe in, above, upon or about said building or premises, nor for damage occasioned by water being upon or coming through the roof, skylight, trap-door, or otherwise, not due to structural defects, nor for any damage arising from acts or negligence of co-tenants or other occupants of the same building or owners or occupants of adjoining or contiguous property.
*854 Our analysis of these provisions leads us to believe that the court erred in ordering the city to repair the roof.
There is no doubt that if the lease required Allen Marine to repair the roof, the city also became obligated to do so upon acquiring a reversionary interest through the purchase of the land subject to the lease. General Cigar Co. v. Davis, 204 So.2d 227 (Fla. 3d DCA 1967). However, it is well settled that absent a special agreement to repair demised premises, a landlord is not under a duty to make repairs. McKenzie v. Atlantic Manor, Inc., 181 So.2d 554 (Fla. 3d DCA 1965), cert. denied, 192 So.2d 495 (Fla. 1966); Easton v. Weir, 125 So.2d 115 (Fla. 2d DCA 1960), cert. denied, 129 So.2d 141 (Fla. 1961); 49 Am.Jur.2d Landlord and Tenant § 774 (1970).
The elimination of the lessee's obligation to repair the roof in paragraph twenty-fourth did not place this requirement upon the lessor. This provision simply served to exonerate the lessee from any common law obligation it might have had to repair the roof in the absence of an agreement. See 51C C.J.S. Landlord and Tenant § 366(1)b (1968).
The case of Fischer v. Collier, 143 So.2d 710 (Fla. 2d DCA 1962), is nearly on point. In 1953 the parties had entered into a lease of a dock over an inlet on which buildings were constructed together with a parking lot. The lease contained the following provision:
"Lessee shall be responsible for maintenance of docks, buildings piers, and for the neat appearnce [sic] of the land adjacent to said docks which is used for automobile parking. Maintenance is herein defined to include all basic maintenance and repairs except replacement of dock piling and main dock stringers. Lessee shall replace dock planking and repair dock building roofs, but shall not be responsible for complete roof or complete dock planking replacement. Lessee will further be responsible for maintenance and filling of the land immediately adjoining the dock and along and behind the seawall. * * *"
143 So.2d at 711. The lessee later brought suit against the lessor for failure to make repairs, alleging that prior to September of 1960 the pilings and stringers under the dock were in such bad condition that they needed replacing, and that as a result of hurricane Donna which occurred on September 10, 1960, the stringers and planking were completely blown away. Among the reasons given for affirming the dismissal of the complaint, this court relied upon the principle that in the absence of a special agreement to repair, a landlord is not under such a duty. Significantly, the opinion included the following quotation from the case of Plate Glass Underwriters' Mutual Insurance Co. v. Ridgewood Realty Co., 219 Mo. App. 186, 269 S.W. 659 (1925):
"Now, no matter if the above language may seem to imply that since lessee is not obligated to repair damage by windstorm the landlord is so obligated, yet, under the law of landlord and tenant, this, of itself, is not sufficient to bind the landlord to do so. For, under that law, a landlord is not obligated or bound to repair unless he has expressly agreed to do so, and the only express agreement on the landlord's part, in the above clause, is to repair the roof and keep the outside painted. * * *"
143 So.2d at 713. Thus, Fischer stands for the proposition that a lessor's duty to repair cannot be raised by implication from a provision which exonerates the lessee from making the same repair. Accord Refrigeration for Science, Inc. v. Deacon Realty Corp., 70 Misc.2d 500, 334 N.Y.S.2d 418 (Sup.Ct. 1972), aff'd, 42 A.D.2d 597, 344 N.Y.S.2d 1018 (1973); Friedman-White Realty Co. v. Garage Development Corp., 130 Misc. 266, 223 N.Y.S. 839 (N.Y.Mun.Ct. 1927). The contrary view represented by Jersey Silk & Lace Stores v. Best Silk Shops, 134 Misc. 315, 235 N.Y.S. 277 (N.Y. City Ct. 1929), was rejected in the Fischer case.
The thirtieth paragraph only addresses damages occasioned by the failure to repair. This appeal does not involve a *855 contention that any of Competition Sails' property was damaged because of leaks in the roof. In any event, despite the trial court's conclusion to the contrary, there was no evidence that the leaks in the roof were the result of structural defects. Both experts admitted that the leaking roof was caused by lack of maintenance.
The fact that the city repaired the roof on a few occasions did not constitute an assumption of the obligation to repair. 3A G. Thompson, Thompson on Real Property § 1230 (1981). In Fischer v. Collier we rejected the contention that by virtue of having previously made repairs to the dock, the lessor voluntarily assumed the duty to repair. The principle that the parties' own construction of a contract should be followed is only applicable when the contract is susceptible to such a construction. See Natural Kitchen, Inc. v. American Transworld Corp., 449 So.2d 855 (Fla. 2d DCA 1984). Here, the lease placed no obligation upon the lessor to repair the roof.
The trial court's ruling on the matter of docking space stands on a different footing. On this subject, the lease provided:
FORTY-THIRD: The terms of this lease specifically provide for the Lessee being given the right to use the existing dock space owned by the Lessor for itself and its customers in the operation of its business. Such right shall not be exclusive with the Lessee, and the parties agree to cooperate in all reasonable use of such docking facilities.
The lease clearly obligated the lessor to make its nearby docking facilities available to the lessee. The promise to provide dock space was not so personal as to apply only to the original lessor. The forty-third clause reflects an intent that Competition Sails could use the docking facilities in connection with the operation of its business on the leased premises. The burden of this covenant sufficiently "ran with the land" so as to devolve upon the city when it acquired its reversionary interest. 2 R. Powell, Powell on Real Property § 246[2] (1983). The contention that the city was obligated only to provide dock space so long as the docks were in existence falls in the face of the city's own action of removing the dock. See Metropolitan Dade County v. Babcock Co., 287 So.2d 139 (Fla. 3d DCA 1973), which notes that a contracting party cannot take advantage of an obstacle to its performance which it has created or lay within its power to remove or avoid.
We reverse the judgment with respect to the requirement that the city repair the roof. We affirm the judgment insofar as it provides that the city must provide dock space for Competition Sails.
SCHEB and SCHOONOVER, JJ., concur.