ESTATE OF CLARA NICKOLL, DECEASED, B. E. NICKOLL, EXECUTOR AND B. E. NICKOLL, INDIVIDUALLY, PETITIONERS, *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT.

Docket No. 65730. Filed September 30, 1959.

*Maurice Weinstein, Esq.*, and *Byron Axel, Esq.*, for the petitioners.
*James T. Wilkes, Jr., Esq.*, for the respondent.

DRENNEN, *Judge:* Respondent determined a deficiency in petitioners' income tax for the calendar year 1953 in the amount of $4,922.90. The issues are whether petitioners are entitled to a deduction for a loss sustained by virtue of the voluntary demolition of a building owned by them in the year 1953, and if such loss is deductible, the amount thereof.

### FINDINGS OF FACT.

Some of the facts have been stipulated and are incorporated herein by this reference.

Petitioner B. E. Nickoll was a resident of Milwaukee, Wisconsin, and filed his income tax return for the year 1953 with the district director of internal revenue at Milwaukee, Wisconsin. B. E. Nickoll and Clara Nickoll were husband and wife up to and including July 14, 1953, at which time Clara Nickoll died. The return filed for the year 1953 was filed as a joint return by B. E. Nickoll.

B. E. Nickoll was the executor of the estate of Clara Nickoll, which estate is closed, all the assets having been distributed and the executor discharged in November 1954, prior to the issuance of the notice of deficiency.

On January 11, 1941, the Claire Investment Company, a Wisconsin corporation, of which petitioners owned all the stock, purchased the land and buildings at 268–270 West Main Street, Waukesha, Wisconsin. At that time, Buehler Brothers occupied the premises under a written lease. Buehler Brothers operated a meat market on the premises and continued in possession until May 31, 1953, when their lease expired.

On April 30, 1951, the Claire Investment Company was dissolved and the property was conveyed to petitioners in liquidation, subject to the Buehler Brothers' lease. At the time the Claire Investment Company was dissolved, this property was reflected on its books as follows: Land, $8,000, building, $11,173.16. Petitioners entered the property on their books in the same amounts.

Before expiration of their lease, Buehler Brothers advised petitioners that they would vacate the premises upon expiration of the lease. Petitioners thereupon made an effort to obtain new tenants for the building in its present state, but they were unable to do so. However, on January 23, 1953, petitioners entered into a lease of the property with Diana Super Outlet of Oakland, Inc., hereafter referred to as Diana.

The term of the lease was for a period of 30 years and it provided that after the tenant was put into possession, it would make replacements, repairs, additions, improvements, alterations, or changes necessary for the business of the tenant, including an extension to the rear of the building of not less than 40 feet, in accordance with plans prepared by the tenant and submitted to the landlord for approval. Upon completion of the construction work, the tenant was to furnish petitioners a statement setting forth the gross cost for all the work done, and upon receipt of such statement, petitioners were to reimburse the tenant for such expenditures up to the sum of $50,000.

The lease provided for a minimum annual rental of $6,000, plus an additional percentage rental of 4 per cent of the gross sales of the tenant in excess of $225,000 per annum. In addition, the rental clause in the lease provided that following the reimbursement by petitioners to the tenant of the gross cost of alteration and construction work on the building up to $50,000, an additional rental in the amount of such gross cost reimbursed by petitioners to the tenant would be paid which would in effect reimburse petitioners over a period of 20 years with the amount they paid to the tenant for the construction work, plus 4½ per cent on the unpaid balances. The tenant was given the right at its option at any time prior to the period of 20 years to make payment of the entire unpaid balance then owing on any mortgage or financing, the proceeds of which had been paid over by petitioners to the tenant as reimbursement for its gross cost of altering and reconstructing the demised premises; thereafter this additional rental would cease and no longer be payable by tenant to petitioners. By letter the tenant agreed not to prepay the mortgage or financing arrangement in excess of 20 per cent in any one year.

Pursuant to the above lease, the old building on the premises was partially demolished and replaced by a new building. Eighty-five per cent of the old building was demolished and 15 per cent was utilized in the new building. The lessee paid the contractor $58,720.89 for this work and was reimbursed in the amount of $50,000 by petitioners.

Petitioners deducted a loss of $10,545.46 on their 1953 income tax return as a result of the demolition of the building. The loss was computed by deducting from the $11,173.16 basis in the building set up on their books by petitioners upon receipt of the property

**1348**

in liquidation of Claire Investment Company the depreciation claimed from that time until demolition of the building, in the amount of $627.70, leaving an adjusted basis after depreciation at the time of demolition in the amount of $10,545.46. Respondent disallowed the loss in its entirety, and petitioners agree that a maximum of 85 per cent of the loss claimed would be allowable. Respondent's disallowance of the deduction claimed results in the deficiency herein asserted.

At the time of the demolition of the building in 1953, and also in 1951, the property in question was assessed for local tax purposes in the amount of $17,550 for the land and $5,500 for the building.

Petitioners did not suffer a deductible loss on the voluntary demolition of this building in 1953.

OPINION.

Petitioners argue that inasmuch as they had no intention of demolishing the old building at the time they acquired the property and the decision to demolish the building came after its purchase and was motivated by an intervening event, they are entitled to a deduction for loss sustained due to the voluntary demolition of the old building in 1953, citing in support thereof *Union Bed & Spring Co.* v. *Commissioner*, 39 F. 2d 383 (C.A. 7), reversing 9 B.T.A. 352; *Jack M. Chesbro*, 21 T.C. 123, affirmed per curiam 225 F. 2d 674 (C.A. 2), certiorari denied 350 U.S. 995; *Piedmont Nat. Bank of Spartanburg* v. *United States*, 162 F. Supp. 919 (W.D. S.C.); and two unreported Memorandum Opinions of this Court.

Respondent contends that inasmuch as petitioners received a new lease covering a period of 30 years in which the lessee obligated itself to demolish the old building and to construct a new building on the premises, they received a *quid pro quo* for the value of the building demolished and therefore do not come within the statutory provision [1] requiring that a loss, in order to be deductible, be not compensated for by insurance or otherwise, citing in support thereof *Chas. N. Manning et al.*, 7 B.T.A. 286; *Wm. Ward*, 7 B.T.A. 1107; *Young* v. *Commissioner*, 59 F. 2d 691 (C.A. 9), affirming 20 B.T.A. 692, certiorari denied 287 U.S. 652; *Anahma Realty Corporation*

---

[1] SEC. 23. DEDUCTIONS FROM GROSS INCOME.
In computing net income there shall be allowed as deductions:

* * * * * * *

(e) LOSSES BY INDIVIDUALS.—In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
    (1) if incurred in trade or business; or
    (2) if incurred in any transaction entered into for profit, though not connected with the trade or business; or
    (3) of property not connected with the trade or business, if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. No loss shall be allowed as a deduction under this paragraph if at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes in the estate tax return.

v. *Commissioner*, 42 F. 2d 128 (C.A. 2), affirming 16 B.T.A. 749, certiorari denied 282 U.S. 854; and *Spinks Realty Co.* v. *Burnet*, 62 F. 2d 860 (C.A. D.C.), affirming 21 B.T.A. 674, certiorari denied 290 U.S. 636.

In reply to respondent's argument, petitioners claim that the cases cited by respondent are not controlling since in all of those cases the lessee paid for the building and the lessor therefore gained on the transaction rather than suffered a loss, whereas in this case the lessor paid for the new building.

We think this case must be decided in favor of respondent for the reasons stated in *Commissioner* v. *Appleby's Estate*, 123 F. 2d 700 (C.A. 2), affirming 41 B.T.A. 18; *Blumenfeld Enterprises, Inc.*, 23 T.C. 665, affirmed per curiam 232 F. 2d 396 (C.A. 9); *A. Raymond Jones*, 25 T.C. 1100, reversed on another point 259 F. 2d 300 (C.A. 5); and *Henry Phipps Estates*, 5 T.C. 964. These cases recognize that losses due to voluntary demolition of old buildings may be deductible and also recognize that there are exceptions to this rule, such as where a taxpayer buys real estate improved with a building which, at the time he buys, he intends to demolish,[2] or where, incident to a new and valuable lease, it is agreed that the old buildings will be demolished. But they also recognize that merely because taxpayer may not deduct a loss if at the time he purchases property he intends to demolish the buildings thereon, he is not automatically entitled to deduct a loss for buildings that he decides to demolish at some later date due to the occurrence of an intervening event, because in order to be entitled to a deduction the taxpayer must have actually suffered a loss in a closed transaction. The Court of Appeals for the Second Circuit said in *Commissioner* v. *Appleby's Estate, supra* at 702:

Losses are recognized only when they result from a closed transaction. If a building is demolished because unsuitable for further use, the transaction with respect to the building is closed and the taxpayer may take his loss; but if the purpose of demolition is to make way for the erection of a new structure, the result is merely to substitute a more valuable asset for the less valuable and the loss from demolition may reasonably be considered as part of the cost of the new asset and to be depreciated during its life * * *. The cases which have dealt with the regulations under discussion are not out of harmony with this view. * * *

There is no question from the evidence in this case that petitioners agreed to the partial demolition of their old building to make way for a building altered and improved to suit the lessee's needs, and we think the rule of *Commissioner* v. *Appleby's Estate, supra*, and the other cases cited in connection therewith require disallowance of a demolition loss to petitioners in 1953 whether they paid for the remodeled building or whether the lessee paid for it.

---

[2] See Regs. 118, sec. 39.23(e)–2, and cases cited by respondent.

We also believe that the cases cited by respondent would require a similar holding. The evidence indicates that the only reason petitioners agreed to the demolition of the old building was to obtain the lease with Diana which they must have considered to be of more value than the old building in its present state, and that they were therefore compensated for any loss they may have suffered from demolition of the old building. Whether they paid for the remodeled building or the lessee actually paid for it would go only to the adequacy of their compensation, but they were at all times the owners of the building, and the terms of the lease, whether construed one way or the other, gave them adequate compensation for their loss.

We conclude that petitioners are not entitled to deduct a demolition loss in the year 1953. In view of this conclusion no issue remains as to the amount of the loss.

*Decision will be entered for the respondent.*