**ESTATE of Clara NICKOLL, Deceased, B. E. Nickoll, Executor and B. E. Nickoll, Individually, Petitioners,**

v.

**COMMISSIONER OF INTERNAL REVENUE, Respondent.**

**No. 12978.**

United States Court of Appeals
Seventh Circuit.

Oct. 12, 1960.

Maurice Weinstein, Milwaukee, Wis., for petitioners.

Charles K. Rice, Asst. Atty. Gen., Tax Division, Sharon L. King, Atty., U. S. Dept. of Justice, Washington, D. C., Howard A. Heffron, Acting Asst. Atty.

Gen., Lee A. Jackson, I. Henry Kutz, William A. Friedlander, Attys., Dept. of Justice, Washington, D. C., for respondent.

Before HASTINGS, Chief Judge, and SCHNACKENBERG and KNOCH, Circuit Judges.

HASTINGS, Chief Judge.

This appeal is taken pursuant to 26 U.S.C.A. § 7482 to review a decision of the Tax Court of the United States which found a deficiency of $4,922.90 in the 1953 income tax of estate of Clara Nickoll, deceased, B. E. Nickoll, executor and B. E. Nickoll, individually. 32 T.C. 1346 (1959). Mrs. Nickoll died in mid-1953; her husband filed a joint return for that year. The estate of Mrs. Nickoll was closed and all assets distributed prior of the issuance of the notice of deficiency.

The deficiency arose from the Tax Court's disallowance of a loss deduction taken by taxpayers under Section 23(e) of the Internal Revenue Code of 1939.[1] The deduction was based upon the substantial demolition of business property of taxpayers.[2]

On oral argument taxpayers concede that there is no dispute as to the facts and that they were found correctly by the Tax Court. The record reveals the factual background of the demolition. In 1941, Claire Investment Company, a corporation wholly owned by taxpayers, purchased the building in question and the land upon which it stood. A meat market, then tenant of the premises under written lease, continued in possession until the lease expired on May 31, 1953.

In 1951, Claire Investment Company was dissolved and the land and building, subject to the market's lease, were conveyed in liquidation to taxpayers. Before expiration of the lease, taxpayers were notified that tenants would vacate and made sustained efforts to obtain a new tenant for the building. They met with no success because of the physical condition of the building.

On January 23, 1953, taxpayers entered into a lease agreement with Diana Super Outlet of Oakland, Inc. This lease permitted Diana to make necessary *alterations and additions* to the building suitable to its commercial needs. These alterations resulted in the partial demolition of taxpayers' building and replacement of the demolished part by a new building.

Specifically, the 30-year lease agreement between taxpayers and Diana provided that the tenant would make replacements, repairs, additions, improvement, alterations or changes necessary for its business, in accordance with plans prepared by the tenant and submitted to taxpayers for approval. Upon completion of construction work, Diana was to furnish taxpayers with a statement setting forth the gross cost of all work done and taxpayers were then to reimburse

---

1. "Internal Revenue Code of 1939:
    "Sec. 23. Deductions from gross income.
    "In computing net income there shall be allowed as deductions:

    *     *     *     *     *

    "(e) *Losses by individuals.* In the case of an individual, losses sustained during the taxable year and not compensated for by insurance or otherwise—
    "(1) if incurred in trade or business; or
    "(2) if incurred in any transaction entered into for profit, though not connected with the trade or business; * * * if the loss arises from fires, storms, shipwreck, or other casualty, or from theft. No loss shall be allowed as a deduction under this paragraph if at the time of the filing of the return such loss has been claimed as a deduction for estate tax purposes in the estate tax return."
    26 U.S.C.A. § 23 (1952 ed.). Cf. 26 U.S.C.A. § 165 (1955 ed.)

2. Taxpayers originally deducted the full depreciated value of the building. Before the Tax Court and here, they contend that since 85% of the building was demolished, they should receive a deduction of that percentage of the depreciated value of the building. Because of our disposition of this case, we do not face the issue of the proper amount of the deduction.

Diana for such expenditures up to the sum of $50,000.

The lease provided for a minimum annual rental of $6,000 plus an additional percentage rental of 4 per cent of the gross sales of the tenant in excess of $225,000 per annum. In addition, the rental clause in the lease provided that following the reimbursement by taxpayers to Diana of the gross cost of alteration and construction work on the building up to $50,000, an additional rental in the amount of such gross cost reimbursed by taxpayers to Diana would be paid which would in effect reimburse taxpayers over a period of 20 years with the amount they paid to Diana for the construction work, plus 4½ per cent interest on the unpaid balances. Diana was given the right at its option at any time prior to the expiration of the period of 20 years to make payment of the entire unpaid balance then owing on any mortgage or financing, the proceeds of which had been paid over by taxpayers to Diana as reimbursement for its gross cost of altering and reconstructing the demised premises; thereafter, this additional rental would cease and no longer be payable by Diana to taxpayers. By letter Diana agreed not to prepay the mortgage or financing arrangement in excess of 20 per cent in any one year.

Pursuant to the above lease, 85 per cent of the old building was demolished and 15 per cent was utilized in the new construction which replaced it. Diana paid the contractor $58,720.89 for this work and was reimbursed in the amount of $50,000 by taxpayers.

██ In these circumstances we hold that the Tax Court properly denied the loss deduction. The old building was substantially demolished as a necessary condition precedent to the execution of a remunerative lease under which taxpayers became the owner of a remodeled building. The value of the old building which was partially demolished is properly charged as a cost of acquiring valuable lease rights and is to be amortized over the life of the lease. Camp Wolters Land Co. v. Commissioner of Internal Revenue, 5 Cir., 1947, 160 F.2d 84, 87, 89; Smith Real Estate Co. v. Page, 1 Cir., 1933, 67 F.2d 462, 463; Spinks Realty Co. v. Burnet, 1932, 61 App.D.C. 321, 62 F.2d 860; Young v. Commissioner of Internal Revenue, 9 Cir., 1932, 59 F.2d 691, 692–693, certiorari denied 287 U.S. 652, 53 S.Ct. 116, 77 L.Ed. 563; Anahma Realty Corporation v. Commissioner of Internal Revenue, 2 Cir., 1930, 42 F.2d 128. 5 Mertens, Law of Federal Income Taxation (Rev.) § 28.22.

Taxpayers have urged that under the terms of the lease agreement, they ultimately bore at least $50,000 of the cost of demolishing the old building and replacing it. This fact, they contend, distinguishes the present case from those cited, supra. Commissioner answers that the $50,000 reimbursement was actually a loan to Diana, paid back with interest and that the lessee ultimately bore the cost of the replacement. In the alternative, Commissioner contends that it makes no difference whether the $50,000 payment was a loan but that the controlling fact is that taxpayers were able to obtain a valuable lease agreement by consenting to the partial demolition of their building. Since we agree with this latter contention, we need not determine the nature of the $50,000 payment. Our position is consistent with a recently promulgated Treasury Regulation:

> "If a *lessor or lessee* of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a part of the cost of the lease to be amortized over the term thereof." (Emphasis added.) Treas.Reg. § 1.165–3 (1960).

898

■ Throughout this litigation taxpayers have relied on a line of cases based upon Union Bed & Spring Co. v. Commissioner of Internal Revenue, 7 Cir., 1930, 39 F.2d 383. See also, Providence Journal Co. v. Broderick, 1 Cir., 1939, 104 F.2d 614; Liberty Baking Co. v. Heiner, 3 Cir., 1930, 37 F.2d 703; Lynchburg National Bank & Trust Co., 20 T.C. 670, 674, affirmed 4 Cir., 1953, 208 F.2d 757; N. W. Ayer & Son, Inc., 1951, 17 T.C. 631. Taxpayers argue that these cases stand for the following propositions which control this case: that the intent of the taxpayer, with respect to demolition, on the date of acquisition of the property is a controlling factor in determining whether a loss deduction is proper; that no loss is deductible if at the time of acquisition there was an intent to demolish; but that if the decision to demolish was made subsequent to acquisition because of *an intervening event that made the building unusable,* then a loss deduction is proper.

We agree with these principles as an abstract statement of law.

■ Taxpayers concede and the record amply demonstrates that taxpayers had no intent to demolish at the time of acquisition of the property. However, we find no intervening event that made the building in question unusable. Further, these cases on which taxpayers rely do not involve situations where the subsequent intent to demolish was intimately connected with and incidental to taxpayers' securing a valuable lease and ownership of a remodeled building as is the case here. They are not applicable to the situation before us.

Because of our disposition of the case, we do not reach the other issues taxpayers raise in their briefs.

The decision of the Tax Court is Affirmed.