HERMAN LANDERMAN, ET AL.,[1] PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket Nos. 3075–68, 3076–68, 5229–68.   Filed May 20, 1970.

*Karl Schelly,* for the petitioners.
*Frank C. Conley* and *Robert H. Burgess,* for the respondent.

---

[8] H. Rept. No. 749, 88th Cong., 1st Sess., p. 34; S. Rept. No. 830, 88th Cong., Sess., p. 40.

[1] Cases of the following petitioners are consolidated herewith: Herman Landerman and Evelyn Landerman, docket No. 3076–68, and Landerman Investment Co., docket No. 5229–68.

1044

OPINION

The sole issue herein is whether petitioners are entitled to a loss deduction pursuant to section 165(a)[2] on account of the demolition by a lessee of a building (including disposal of the contents) owned by a partnership in which Herman and Investment were the sole partners. The partnership treated the adjusted basis of the building, fixtures, and equipment as of January 1, 1965, in the amount of $610,982.13 as a demolition loss for the year 1965. Respondent in his notice of deficiency allowed a depreciation deduction to the partnership for the period January 1 to April 30, 1965, and required that the remaining basis of $584,475.11 be amortized over 54 years, the then remaining term of the lease.

There is no question but that, apart from the impact of a specific provision in respondent's regulations (see p. 1046, *infra*), the claimed demolition loss would not be allowable. *Nickoll's Estate* v. *Commissioner*, 282 F. 2d 895 (C.A. 7, 1960), affirming 32 T.C. 1346 (1959); *Blumenfeld Enterprises, Inc.* v. *Commissioner*, 232 F. 2d 396 (C.A. 9, 1956), affirming per curiam 23 T.C. 665 (1955); *Spinks Realty Co.* v. *Burnet*, 62 F. 2d 860 (C.A.D.C. 1932), affirming 21 B.T.A. 674 (1930); *Young* v. *Commissioner*, 59 F. 2d 691 (C.A. 9, 1932), affirming 20 B.T.A. 692 (1930); *Oscar K. Eysenbach*, 10 B.T.A. 716 (1928); *Anahma Realty Corporation* v. *Commissioner*, 42 F. 2d 128 (C.A. 2, 1930), affirming 16 B.T.A. 749 (1929); *Wm. Ward*, 7 B.T.A. 1107 (1927); *Chas. N. Manning, et al.*, 7 B.T.A. 286 (1927). The focus of these decisions was an inquiry into the economics of each factual situation in order to determine whether the demolition constituted a benefit rather than a detriment to the lessor, i.e., could it be said that the lessor had suffered a loss at the time of demolition or would any such purported loss in fact be compensated for through the receipt of future rentals?

[2] All references, unless otherwise specified, are to the Internal Revenue Code of 1954, as amended.
SEC. 165. LOSSES.
(a) GENERAL RULE.—There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise.

The critical problem is whether section 1.165–3(b) (2), Income Tax Regs.,[3] brought about an abrogation of this long-standing consistent judicial interpretation so as to permit the deduction of the claimed demolition loss herein. Respondent asserts that no such abrogation has occurred.[4] Petitioner argues that the demolition was not *required* by the lease as specified in the regulation and that, under the rule of *Feldman* v. *Wood*, 335 F. 2d 264 (C.A. 9, 1964), reversing an unreported opinion (D. Ariz. 1963, 11 A.F.T.R. 2d 1359, 63–1 U.S.T.C. par. 9428), a loss deduction on account of the demolition of leased premises by the lessee is allowed to the lessor, when the demolition is permitted rather than mandated by the terms of the lease. We agree with respondent.

Neither Regs. 118, which applied to the Internal Revenue Code of 1939, nor the regulations initially proposed under the 1954 Code, sec. 1.165–1(b), Proposed Income Tax Regs., contained any provision with respect to demolition losses in a lease context. In 1959, new regulations were proposed which provided that, upon demolition of a building by the lessor or the lessee "pursuant to the terms of a lease," no loss deduction would be allowed to the lessor, but the adjusted basis of the demolished structure could be amortized over the term of the lease. Sec. 1.165–3(d), Proposed Income Tax Regs., 24 Fed. Reg. 8177, 8180 (1959). In the regulations as finally promulgated, section 1.165–3(d) became section 1.165–3(b) (2) and the phrase, "pursuant to the terms of a lease," was replaced by the language "pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease." See 25 Fed. Reg. 381, 383 (1960).

As we see it, the attempt by respondent to deal with demolition in a lease context and the evolution of his regulations were designed to make the immediate contemplation and the bargaining stance of the parties, at the time the lease arrangements were made, the focal point of determination. By so doing, problems of optional demolition by a lessee at a much later period of the lease would be avoided. In such a situation, the demolition might well not be an essential induc-

---

[3] Section 1.165–3. Demolition of buildings.

(b) *Intent to demolish formed subsequent to the time of acquisition.* * * *

(2) If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a part of the cost of the lease to be amortized over the term thereof.

[4] At the trial, respondent also sought to establish that disallowances of the portion of the demolition loss attributable to the 57½-percent partnership interest in H & E acquired by Investment on Jan. 31, 1964, and a further portion of the remaining loss attributable to certain personalty should, in any event, be sustained. Our decision herein makes consideration of these points unnecessary, but we note that respondent has made no arguments on brief with respect to such issues, with the result that they may properly be considered as abandoned.

ing element of the lease and the extent, if any, of loss to the lessor could depend upon the time relationship between the date of demolition and the terminal date of the lease, i.e., it might be difficult to say that a demolition by the lessee only a year or two before the end of the lease would not produce such a loss. In this frame of reference, the replacement of the word "terms" with the word "requirements" becomes clear, since an optional demolition near the end of a lease would still be pursuant to its "terms."

Nor do we think that, as a semantical matter, the word "requirements" is restricted to an interpretation which demands the presence of a formal mandatory undertaking by a lessee. The dictionary definition of "requirements" includes "something that is wanted or needed" as well as "something required." See Webster's Third New International Dictionary, Unabridged.

In short, we hold that respondent's regulations were intended to encompass an examination of whether demolition was sufficiently within the contemplation of the parties at the time the lease arrangements were made that it can be said that the demolition was an essential underlying condition of those arrangements. So viewed, the standards to be applied are very similar to those involved in determining whether a purchaser is entitled to a deduction for a postdemolition loss. *Wood County Telephone Co.*, 51 T.C. 72 (1968); *Hillside National Bank*, 35 T.C. 879 (1961); see *Blumenfeld Enterprises, Inc.*, 23 T.C. 665, 670 (1955).

In the instant case, as our findings of fact reveal, the demolition of the existing building and the disposal of its contents were an integral element of the bargaining between the parties to the lease and at all times considered by them as an underlying condition of the lease. The fact that such demolition and disposal were begun very soon after the commencement of the term of the lease and completed with dispatch tends to confirm our findings. We conclude on the basis of the entire record before us that the parties to the lease bargained for the land. Certainly, it cannot be said that petitioners have sustained their burden of proof that such was not the case.[4] Consequently, we hold that the demolition and disposal were "pursuant to the requirements of a lease."[5]

*Feldman* v. *Wood, supra,* so heavily relied on by petitioners, is distinguishable on its facts. It appears that, in that case, the lease

---

[4] Petitioners complain that respondent failed to call one Lazoff, the agent of H & E in most of the lease negotiations, and that we should therefore not accept the testimony as to the character of the negotiations by the representative of the lessee. In so doing, petitioners fail to recognize that the burden of proof was upon them and not respondent. Rule 32, Tax Court Rules of Practice.

[5] In light of the particular facts of this case, we need not decide whether, as respondent contends, the provisions of sec. 1.165–3(b)(2) are, under all circumstances, merely declaratory of previously existing case law. See Rev. Rul. 67–410, 1967–2 C.B. 93.

was entered into in 1955 and the optional demolition by the lessee did not occur until 1957. There is no indication that demolition was sufficiently within the contemplation of the parties at the time the lease was made so as to have been an element of the bargaining. Indeed, an examination of the briefs and the limited record submitted on appeal indicates that such demolition was in fact not contemplated. Under such circumstances, it would seem clear that the demolition was not "pursuant to the requirements of a lease." Cf. *Estate of Clara Nickoll*, 32 T.C. 1346 (1959), in which respondent's regulations were impliedly approved.

We recognize that the language of the opinion of the Ninth Circuit Court of Appeals in *Feldman* v. *Wood, supra*, presents a rationale broader than that required by the facts. To the extent that the rationale of that decision rests upon the presence of a formal mandatory obligation on the lessee to demolish, we must respectfully disagree.[6] In our opinion, such a straitjacket interpretation is unwarranted. In *Massey Motors* v. *United States*, 364 U.S. 92 (1960), the Supreme Court was confronted with language of the statute and regulations dealing with depreciation which it described as not "precise and unambiguous," a phrase not without applicability to respondent's regulations herein. Nevertheless, the Court refused to adopt a semantical analysis in order to impart a restrictive interpretation to changes in language which had occurred over the years. Moreover, in that case, the Fifth Circuit Court of Appeals, whose decision was affirmed by the Supreme Court, made the following observation which supports our approach herein:

> It must be borne in mind that there has been no change in the basic statute in any matter here relevant during the entire period of time. We should be thus inclined to look with considerable disfavor on any contention that a slight change in Regulations worked such a double shift in the effect of a simple statute allowing reasonable depreciation. * * *
>
> &ast; &ast; &ast; &ast; &ast; &ast; &ast;
>
> The statute allows a reasonable amount for depreciation. No regulation, although valid and binding to the extent it does not enlarge or conflict with the statute, can bind the Commissioner to the allowance of anything more than a reasonable deduction for a whole class of taxpayers. A construction of this regulation as contended for by this taxpayer would result in not only a grossly unreasonable deduction for depreciation, but would offend the basic concept of depreciation and its purpose. We, therefore, cannot approve a construction of the regulation that would reach this result, or if we did so, we would have to hold it invalid as to the factual situation here present as not being authorized by the statute. [See 264 F. 2d 552 at pages 557, 558.]

In order to reflect the concessions of the parties on other issues,

*Decisions will be entered under Rule 50.*

Reviewed by the Court.

---

[6] Under any circumstances, *Feldman* v. *Wood* is not controlling in this case because any appeal herein would go to a different circuit court of appeals. See *Jack E. Golsen*, 54 T.C. 742 (1970).