DONALD S. LEVINSON AND BERNICE LEVINSON, PETITIONERS *v.* COMMISSIONER OF INTERNAL REVENUE, RESPONDENT

Docket No. 4947–70.   Filed February 21, 1973.

*Mannes F. Greenberg* and *David L. Snyder*, for the petitioners.
*John J. Weiler*, for the respondent.

TANNENWALD, *Judge:* Respondent determined deficiencies in petitioners' income tax for 1966 and 1967 in the respective amounts of $1,873.43 and $15,744.53. Petitioners have conceded the entire deficiency for 1966 and a portion of the deficiency for 1967.

The one issue remaining for decision is whether the petitioners are entitled to deduct, as a loss in 1967, the adjusted basis of buildings demolished in that year and the cost of the demolition.

### FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

Petitioners are husband and wife and resided in Baltimore, Md., when they filed the petition herein. They filed a joint Federal income tax return for the calendar year 1967 with the district director of internal revenue, Baltimore, Md.

In 1956, Donald Levinson (hereinafter Donald) acquired certain land in Baltimore and the two old warehouse buildings situated thereon.[1] Donald rented the two buildings to the same tenant on a month-to-month basis and without a formal lease. Adjoining Donald's property was land owned by Armand L. Levinson, the brother of Donald.

In 1966, the City of Baltimore solicited offers to rent office space in an existing or newly constructed building within a specified area of the city. The land owned by Donald and Armand was located within this area.

In September 1966, Armand began negotiations with the City for the construction of a new building, meeting the City's specifications,

---

[1] The record is not entirely clear whether Donald owned the property individually or jointly with his wife. Because Donald was, of the two petitioners, the more active participant in the transaction involved herein, and because, in any event, the petitioners filed a joint return for the taxable year in issue, Donald will hereinafter be referred to as the owner of the property.

on his own and Donald's land. It was clear that the old warehouses on Donald's property, which were altogether unsuited to the City's needs, would have to be demolished in order to construct the new office building. At no point in the negotiation of the lease, however, was it ever proposed that any additional amount would be included in the rent as specific compensation for the undepreciated cost of the old buildings and the cost of their demolition.

Some time prior to the completion of the negotiations, Donald and Armand formed a partnership for the purpose of constructing the new building and renting it to the City. They each agreed to contribute to the partnership their adjoining parcels of land, vacant of buildings.

The partnership and the City executed a lease on May 10, 1967. The partnership agreed to construct a new two-story office building and, upon its completion, rent it to the City for a term of 15 years, subject to the right of the City to terminate the lease after 10 years. The total annual rental was to be $185,000. This lease enabled the partnership to secure the necessary financing for the construction of the new building. Neither the prior correspondence with the City nor the lease itself made any reference to demolition of the old buildings.

Donald demolished the old buildings located on his land. The demolished buildings had an adjusted basis of $23,282. The cost of demolition was $17,000.

The partnership thereafter began construction of the new building and, upon its completion, rented it to the City.[2] Amendments to the lease in 1968 and 1969 provided for an enlargement of the building to four stories, a corresponding increase of the rental by $200,000 per year, and elimination of the City's right to terminate the lease after 10 years.

Respondent disallowed petitioners a deduction for the undepreciated cost of the old buildings and the cost of their demolition, but has conceded that petitioners are entitled to amortize these amounts over the term of the lease with the City.

OPINION

Section 165(a), I.R.C. 1954, as amended, states: "There shall be allowed as a deduction any loss sustained during the taxable year and not compensated for by insurance or otherwise." Petitioners claim a deduction under that section for the adjusted basis of buildings they demolished during 1967 and the cost of such demolition. They argue

---

[2] Donald, and not the partnership, paid and incurred the costs of demolition in order to contribute vacant land to the partnership. The parties agree, however, that this is a technical distinction and that the transaction in question should be treated as if Donald, and not the partnership, was the lessor.

that they sustained an uncompensated loss by reason of the demolition, because the rental provided in the lease of the building subsequently erected on the same site was no greater than what could have been obtained had the new building been constructed on vacant land.

The regulations under section 165 provide, as a general rule, that a deduction is allowable for the demolition of buildings when, as in the instant case, the intent to demolish is formed subsequent to the taxpayer's acquisition of the buildings. Sec. 1.165-3 (b) (1), Income Tax Regs.[3] That general rule, however, is subject to the following exception, which respondent believes is controlling herein: "If a lessor * * * of real property demolishes the buildings situated thereon pursuant to the requirements of a lease * * *, no deduction shall be allowed to the lessor under section 165 (a) on account of the demolition of the old buildings." Sec. 1.165-3 (b) (2).

Petitioners readily admit that the demolition of the existing buildings was "pursuant to the requirements of" the lease with the City in the sense that "but for" the demolition the new buildings could not have been constructed. They argue, however, that the instant situation does not fall within the scope of section 1.165-3 (b) (2) of the regulations and that therefore they should be allowed a current deduction under section 1.165-3 (b) (1). In their view, the decided cases indicate that section 1.165-3 (b) (2) is meant to apply only in situations where the principal objective of a lease is to obtain the use of the *land* and the demolition occurs in order to accomplish that objective. Compare *Foltz* v. *United States*, 458 F. 2d 600 (C.A. 8, 1972), and *Herman Landerman*, 54 T.C. 1042 (1970), affd. 454 F. 2d 338 (C.A. 7, 1971), which accorded a broad interpretation to the clause "pursuant to the requirements of a lease," with *Hightower* v. *United States*, 463 F. 2d 182 (C.A. 5, 1972), and *Feldman* v. *Wood*, 335 F. 2d 264 (C.A. 9, 1964), which accorded a narrow interpretation to that clause. Petitioners maintain that section 1.165-3 (b) (2) was not meant to apply to

---

[3] Sec. 1.165-3   Demolition of buildings.

(b) *Intent to demolish formed subsequent to the time of acquisition.* (1) Except as provided in subparagraph (2) of this paragraph, the loss incurred in a trade or business or in a transaction entered into for profit and arising from a demolition of old buildings shall be allowed as a deduction under section 165 (a) if the demolition occurs as a result of a plan formed subsequent to the acquisition of the buildings demolished. The amount of the loss shall be the adjusted basis of the buildings demolished increased by the net cost of demolition or decreased by the net proceeds from demolition. See paragraph (c) of § 1.165-1 relating to amount deductible under section 165. The basis of any building acquired in replacement of the old buildings shall not include any part of the basis of the property demolished.

(2) If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165 (a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a part of the cost of the lease to be amortized over the term thereof.

situations where the lease and the circumstances of its negotiation have only the use of the new building as their principal objective. In support of such contention, they stress the fact that the City bargained only for the lease of a new building and offered no additional monetary allowance for the fact that Donald had to demolish the existing buildings to fulfill that bargain. On this basis, petitioners conclude that they suffered a "loss * * * not compensated for by insurance or otherwise" within the meaning of section 165(a). Compare *Holder* v. *United States*, 444 F. 2d 1297 (C.A. 5, 1971).

We are not impressed with petitioners' arguments. Clearly, the "demolition was sufficiently within the contemplation of the parties at the time the lease arrangments were made that it can be said that the demolition was an essential underlying condition of those arrangements." See *Herman Landerman*, 54 T.C. at 1047. Demolition of the old buildings was necessary to construct the new building and, hence, to obtain the lease, and the costs involved were incurred in order to obtain the rents to be paid. The fact that the rental was no greater than could have been obtained had the new building been constructed on vacant land does not prove a lack of compensation for the costs of demolition but merely goes to the adequacy of the compensation. Cf. *Estate of Clara Nickoll*, 32 T.C. 1346, 1350 (1959), affd. 282 F. 2d 895 (C.A. 7, 1960). Respondent concedes that petitioners may obtain offsetting deductions against the rental income by way of amortization of the adjusted basis of the demolished buildings and the cost of their demolition over the term of the lease, as provided by section 1.165–3(b)(2).

Nor are we impressed with petitioners' further argument that section 1.165–3(b)(2) is invalid because it establishes an arbitrary exception to the general rule of deductibility prescribed in section 1.165–3 (b)(1). In support of this contention, petitioners have favored us with a comprehensive analysis of respondent's prior regulations and the case law in respect thereto, much of which is set forth in *Herman Landerman*, 54 T.C. at 1045–1047, and *Landerman* v. *Commissioner*, 454 F. 2d 338, 340–341 (C.A. 7, 1971). Under that case law, a taxpayer who demolished an old building in order to replace it with a new one was required to add the adjusted basis of the old building to the basis of the new building rather than deduct it as a loss, even when the intent to demolish was formed subsequent to the acquisition of the demolished buildings. *A. Raymond Jones*, 25 T.C. 1100, 1103 (1956), reversed on another issue 259 F. 2d 300 (C.A. 5, 1958); *Henry Phipps Estates*, 5 T.C. 964 (1945); *Estate of Edgar S. Appleby*, 41 B.T.A. 18 (1940), affd. 123 F. 2d 700, 702 (C.A. 2, 1941). As under current section 1.165–3(b)(2), however, the earlier cases held

that a lessor who demolished a building in order to construct a new one was required to amortize the basis of the demolished building over the term of the lease, where the demolition was either permitted or required by the terms of the lease. *Estate of Clara Nickoll, supra; Laurene Walker Berger*, 7 T.C. 1339 (1946) ; *Anahma Realty Corporation*, 16 B.T.A. 749 (1929), affd. 42 F. 2d 128 (C.A. 2, 1930) ; *Chas. N. Manning, et al.*, 7 B.T.A. 286 (1927). See also Rev. Rul. 67–410, 1967–2 C.B. 93.

Petitioners' contention is that the current regulation unlike the position taken in the earlier cases makes an arbitrary distinction in providing for different treatment of demolitions depending on whether or not an existing lease is involved. Petitioners maintain that a taxpayer is in the same economic position and should be entitled to deduct a loss in the year of demolition whether he (1) first demolishes the old building, erects a new building on the same site, and then leases the new building, or (2) first leases a new building to be constructed, demolishes the old building, and then erects the new building on the same site.

Petitioners' argument ignores a critical distinction between the two situations. In one, the taxpayer has, by virtue of the lease, acquired a valuable right and the demolition is an essential precondition to his realization of the economic benefits therefrom. In the other such a direct causal relationship between the acquired right and the demolition is lacking, although admittedly every taxpayer who constructs a new building with the intention of leasing it necessarily recognizes that any existing building on the same site must be demolished before his objective can be realized. In essence the respondent has simply adapted an old saying by incorporating into his regulations a recognition of the fact that a taxpayer with "a bird in the hand" is in a different position than a taxpayer with "two in the bush." In this connection we note in passing that the provisions of section 1.165–3 (b) (1) also apply where no lease is involved, i.e., where a taxpayer demolishes an old building and constructs a new one for his own use.[4]

The long and the short of it is that we are not persuaded by petitioners' contention that the right to a current deduction of the full costs associated with demolition where a lease is involved depends upon the degree of hunger manifested by the lessee in the lease negotiations. We think the word "requirement" should be accorded its ordinary mean-

---

[4] We find equally unpersuasive petitioners' subsidiary arguments herein based upon the assertion that rejection of their proposed construction of respondent's regulations will pose problems of allocation where only part of the new building is leased and that the logic of such rejection should permit amortization of the cost of the new building over the term of the lease. Suffice it to say that those issues are not before us, and, in any event, they would appear also to exist in situations covered by petitioners' restrictive construction of respondent's regulations.

ing as something "required, wanted, needed, called for or demanded; a requisite or essential condition." See *Landerman* v. *Commissioner*, 454 F. 2d at 340. Accordingly, we conclude that it is within the fair intendment of respondent's regulations that demolition occurs "pursuant to the requirements of a lease," when it is a necessary precondition to the fulfillment of the obligations under such a lease and irrespective of whether the demolition is based upon a unilateral determination or a consensual understanding or undertaking between the lessor and the lessee.[5]

Petitioners' dissection of the language of our opinion in *Herman Landerman, supra,* is beside the point. The test of deductibility in that case was articulated in light of the facts therein and was not intended to preclude the development, in a different factual context, of further guidelines consistent with the law and respondent's regulations.

*Decision will be entered for respondent.*

---

[5] We might observe that, although the correspondence between Armand and the City does not itself indicate the City requested or demanded the demolition of the old building as a condition of the lease, it strains credulity to assume that the City was not aware of the existence of the old building and of the fact that it would have to be demolished before the new building called for by the lease could be constructed. In this connection, we note that no representative of the City testified at the trial.

