STERLING F. HIGHLEY AND JANE N. HIGLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent; FRANK Z. HIGLEY AND BARBARA M. HIGLEY, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Higley v. Commissioner
Docket Nos. 5808-76, 5809-76.
United States Tax Court
T.C. Memo 1980-306; 1980 Tax Ct. Memo LEXIS 280; 40 T.C.M. (CCH) 941; T.C.M. (RIA) 80306; August 11, 1980, Filed *280 Held: Petitioners may not deduct the basis in buildings which were demolished after leased to a third-party where the lease permitted demolition and both parties contemplated that the lessee might demolish the buildings. Rather, the basis in the buildings must be amortized over the term of the lease. Landerman v. Commissioner,54 T.C. 1042 (1970), affd. 454 F.2d 338 (7th Cir. 1971), cert. den. 406 U.S. 967 (1972). Frederick J. Martin, for the petitioners. Peter W. Mettler, for the respondent. IRWIN
MEMORANDUM FINDINGS OF FACT AND OPINION IRWIN, Judge: Respondent determined deficiencies in petitioners' Federal income tax for 1974 as follows: Docket No.
Deficiency
5808-76
Sterling F. and Jane N. Higley
$ 21,331
5809-76
Frank Z. and Barbara M. Higley
15,267
The only issue presented for our consideration in these consolidated cases is whether petitioners are entitled to a loss deduction for the demolition of buildings by the lessee or whether they must amortize the basis of those buildings over the term of the lease. FINDINGS OF FACT Some of the facts have been stipulated. The stipulation of facts and the exhibits attached thereto are incorporated herein by this reference. Petitioners, *281 Frank Z. and Barbara M. Higley, husband and wife, filed a joint Federal income tax return for the taxable year 1974 with the Office of Internal Revenue Service, Andover, Massachusetts. At the time they filed their petition herein, petitioners resided in Norwich, New York. Petitioners, Sterling F. and Jane N. Higley, husband and wife, filed a joint Federal income tax return for the taxable year 1974 with the Office of Internal Revenue Service, Andover, Massachusetts. At the time they filed their petition herein, petitioners resided in Norwich, New York. [1]
On or before January 2, 1974, the Higleys were co-owners of approximately two acres of improved real property located at the northeast corner of Broad Street and Front Street in Norwich, New York. The property had situated on it an A & P Supermarket located at 47 - 49 Broad Street, a building housing stores known as 53 to 59 Broad Street, and two old frame residences known as 9 and 13 Front Street. When petitioners first acquired the land on which the 53 to 59 Broad Street stores were located, they had no intention of demolishing them. The stores *282 were in good physical condition and were rented as of 1974. The two residences were habitable but in need of repair. In 1973, A & P's real estate representative asked Robert Miller, a real estate broker, to investigate sites for a new store in Norwich.Miller looked at a number of possible locations but concluded that A & P's present location on the Higleys' property was the best site. The Higleys were then presented with three alternative plans to build a new, larger A & P as part of a project to be known as the South Broad Street Mall. Two of the plans called for the demolition of the two residential homes on Front Street to provide for additional parking. The third plan indicated that the 53 to 59 Broad Street stores would also have to be demolished and the new A & P constructed on that spot. Ultimately, the Higleys rejected all of these plans. In late fall 1973, A & P then brought in another developer, Pasquale D. Cipolla, who had previously done work for A & P, to discuss the possibility of the Higleys leasing the property to Cipolla. Both parties contemplated that Cipolla, in turn, would lease the entire premises to A & P which would construct a new store on the property. *283 On or about January 2, 1974, the Higleys entered into a lease of the premises with Cipolla, although Cipolla did not sign the lease until May 1, 1974. Neither Cipolla nor petitioners knew precisely where on the premises the A & P would be built or its size at the time the lease was signed. The lease was prepared in Buffalo by Cipolla's attorneys and the Higleys signed the lease after their attorney reviewed it without making any changes. In pertinent part, the lease provided: Section 2.01. Original Term. To have and to hold said Leased Premises including all improvements thereon, together with all other rights, privileges, assignments and other interests thereunder used or engaged and appertaining thereto in connection with said land and improvements, and including all rights of way, easements, licenses or privileges held, used or engaged by the Lessors or by their predecessors in title in respect to such Leased Premises, unto the Lessee for the term of forty (40) years, commencing on the day the Great Atlantic and Pacific Tea Company, Inc. opens for business, * which, together with an renewel options which may be exercised from time to time as hereinafter provided, shall be *284 known as "Full Lease Term". Notwithstanding the foregoing, the Lessee shall be permitted to commence construction on the subject premises effective on the date of the signing of this lease by the Lessors and Lessee. * * *
Section 3.03 Basic Rental during Construction. It is further agreed and understood that during the construction period that the rental paid to Lessor will be one-half of the contract rental stated in above. Rentals presently received from 47-49 South Broad Street will continue to be payable to Lessor until such buildings become vacated. * * *
Section 3.05. Duty to Construct Improvements. Subject only to provisions hereinafter set forth governing use of the Leased Premises and subject further to the provisions of Section 8.01 relating to the construction of improvements in Norwich, New York, nothing in the foregoing paragraph or in any other provision of this Lease shall be construed so as to limit the type or number of improvements to be constructed by Lessee or to impose any duty whatsoever on Lessee to construct improvements of any kind. * * *
Section 8.01. Construction of Improvements. Lessee *285 shall have the right at its own cost and expense, to construct on any part or all of the Leased Premises, at any time, such commercial building, parking area, driveways, walks, signs and advertising matter as Lessee may from time to time determine. * * *
Section 15.01. Surrender. Lessee shall on the last day of the Full Lease Term or upon any termination of this lease pursuant to Article XIII, or Article XIV, or upon any lease pursuant to Aritcle [sic] XII, or Article XIV, or upon any other termination of this lease, surrender and deliver the Leased Premises with the buildings and improvements then located thereon and the appurtenances thereto into the possession and use of Lessors, without fraud or delay, provided, however, that for a period of six (6) months immediately preceding the expiration of the Full Lease Term and also after the Lessors have served notice upon the Lessee of its option to elect pursuant to Section 13.03, [2] *286 Lessee agrees not to demolish any buildings constructed upon the Leased Premises without the prior written consent of the Lessors. * * *
Section 26.01. Cancellation. In the event the Great Atlantic and Pacific Tea Company should cancel the lease made with Lessee covering the subject premises pursuant to provisions of said lease, between the Great Atlantic and Pacific Tea Company and Lessee, the Lessee hereunder may, at its option, have the right to cancel the lease after receiving notice of cancellation by the Great Atlantic and Pacific Tea Company. No subsequent oral or written agreements were made between Cipolla and the Higleys. On or about April 12, 1974, Cipolla leased the property to A & P.Petitioners did not participate in the negotiations for this lease. In August 1974, Cipolla acquired title to three additional parcels of residential property contiguous to petitioners' property on three sides and known as 15, 17, and 19 Front Street. The previous three owners were unrelated to petitioners and petitioners did not participate in the sales negotiations between Cipolla and the owners of these three properties. These three residences were then demolished by A & P. Also during August 1974, *287 Cipolla demolished petitioners' stores (53 to 59 Broad Street) and all of the residences, but not the existing A & P. Subsequent to the demolition, Cipolla constructed a new A & P Supermarket, building in principal part upon the contiguous parcels of land acquired in August 1974 (after demolishing the residences on the land) and in smaller part upon petitioners' property. OPINION The issue before us is whether petitioners are entitled to a loss deduction pursuant to section 165(a)[3] as the result of the demolition by the lessee of buildings which petitioners owned. We must first determine the appropriate legal standard to apply. Prior to the amendment to section 1.165-3(b) (2), Income Tax Regs., on December 21, 1976, that section provided: If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to the requirements of a lease or the requirements of an agreement which resulted in a lease, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. * * * In Landerman v. Commissioner, 54 T.C. 1042 (1970), *288 affd. 454 F.2d 338 (7th Cir. 1971), cert. den. 406 U.S. 967 (1972), rehearing denied 409 U.S. 903 (1972), the meaning of "requirements of a lease" was at issue. The taxpayer there argued that where demolition was not required under the lease, a loss deduction was allowed.We interpreted these regulations as intending: to encompass an examination of whether demolition was sufficiently within the contemplation of the parties at the time the lease arrangements were made that it can be said that the demolition was an essential underlying condition of those arrangements. So viewed, the standards to be applied are very similar to those involved in determining whether a purchaser is entitled to a deduction for a post-demolition loss. [54 T.C. at 1047] In so holding, we refused to literally apply the phrase "requirements of a lease" and disallowed deductions in situations in which the lease did not have a mandatory demolition clause. See also Foltz v. United States, 458 F.2d 600 (8th Cir. 1972); Levinson v. Commissioner, 59 T.C. 676 (1973). Two circuits have applied a literal meaning to the term and have held that the word "requirements" foreclosed applying the regulation to a lease arrangement *289 under which neither the lessee nor the lessor had an obligation to demolish existing buildings. Hightower v.United States, 463 F.2d 182 (5th Cir. 1972); Feldman v.Wood, 335 F.2d 264 (9th Cir. 1964). [4] *290 The Second Circuit, to which appeal in this case would lie, has not interpreted section 1.165-3(b)(2), Income Tax Regs., prior to its amendment. Accordingly, we follow our decision in Landermanv. Commissioner, supra.[5] *291 We now must address the factual issues of whether the lessee was permitted under the lease to demolish the buildings, and, if so, whether demolition was within the contemplation of the parties at the time the lease arrangements were made. Respondent contends that the lease between petitioners and Cipolla permitted demolition, and, therefore, the above-quoted regulation applies to deny petitioners a deduction. Respondent further contends that not only did the lease permit demolition, but that petitioners knew the buildings would be demolished when they signed the lease. Petitioners argue that the lessee was not permitted under the lease to demolish the structures. They also maintain that they had no knowledge that A & P planned to demolish the buildings at the time they signed the lease with *292 Cipolla nor did they intend that A & P do so. There is no dispute that when Cipolla negotiated the lease with petitioners both parties intended that Cipolla would sublease the property to A & P and that there would be, at the least, construction of a new A & P and possible alterations of existing buildings by A & P. The new construction was specifically authorized under the terms of the lease (sections 2.01, 3.03, 3.05, and 8.01) but the precise size of the new construction and its location were not specified nor known as of January 2, 1974. Respondent contends that these sections authorizing construction also permitted demolition. The only section in the lease which specifically mentions demolition is section 15.01. [6] *294 This section states that the lessee, upon termination of the lease, shall surrender and deliver the leased premises into the possession of the lessors, provided, however, that for a period of six months immediately preceding the expiration of the Full Lease Term and also after the lessors served notice upon the lessee of its option to elect pursuant to section 13.03, the lessee agrees not to demolish any buildings constructed upon the leased premises without the *293 prior written consent of the lessors. Petitioners contend that neither this section nor any other section in the lease authorizes demolition and, therefore, under New York law, the lessee was not permitted to demolish the buildings.[7] We believe that the lease is ambiguous. Petitioners argue that section 15.01 provides only that the lessee may, under limited circumstances, demolish any buildings which the lessee has constructed on the premises. Although respondent does not contend that the section authorizes demolition, the wording of the section is that the lessee agrees not to demolish buildings without the lessor's written consent under certain circumstances. By negative implication, this section appears to contemplate demolition by the lessee, at his option and without the lessor's consent, except under the limited circumstances noted in the section. Nor is it clear that "buildings constructed on the premises" refers only to buildings constructed by the lessees, as petitioners contend. Section 2.01 states that the lease term is to commence on the day A & P opens for business or one year from the date the existing tenants are removed from the premises. Section 3.03 provides, *295 in part, that rentals presently being received from 47-49 South Broad Street would continue to be payable to the lessor until the buildings became vacated. These two sections contemplate, therefore, that the then-present tenants in petitioners' buildings might be removed and the buildings vacated. No additional rent was to be provided by the lessee when (and if) the tenants vacated. This tends to support respondent's position that demolition of these buildings was contemplated by both parties; at most, since all rent from these buildings was due petitioners, it would be a matter of indifference to Cipolla to lease the buildings. Sections 3.05 and 8.01 together state that the lessee has the right to construct on any or all of the leased premises without limitation. This language is very broad and on its face includes the right to construct any buildings on land already built upon; there is no reservation permitting the lessee to make only alterations of present structures. And while these sections do not specifically authorize demolition, it is consistent with the right to demolish existing structures. Having determined that the lease is ambiguous, we now turn to the intent of the *296 parties to determine whether demolition was permitted. [8] It is clear that Cipolla and A & P contemplated that they might demolish some or all of the buildings then standing on petitioners' property to construct either the new A & P or a parking lot for it. That they were unsure where the new A & P was to be constructed is consistent with section 8.01 which permitted the lessee to construct on any part or all of the leased premises. [9] *297 Petitioners contend that they were unaware of Cipolla's and A & P's plans to demolish the buildings. While we accept petitioners statement that they did not know whether A & P or Cipolla would demolish any particular buildings, we believe they were aware that the lessees might do so and intended the lessee to have the right to demolish. In Levinson v. Commissioner, supra at 680, we elaborated further on the test set forth in Landermanv. Commissioner, supra, and held that a demolition occurs pursuant to the requirements of a lease when it is a necessary precondition to the fulfillment of the obligations under the lease irrespective of whether it is based on either a unilateral determination or a consensual understanding or undertaking between the lessor and lessee. Under this test, even if we accept petitioners' testimony that they were unaware of Cipolla's and A & P's plan to demolish the buildings, we believe that demolition occurred pursuant to the lease. This is so because the lease is ambiguous, [10] *298 A & P and Cipolla always intended to demolish the buildings if necessary in order to construct the new A & P or a parking lot, and Cipolla and A & P believed that they were permitted to do so under the lease. The fact that demolition of the existing buildings began very soon after the commencement of the term of the lease tends to confirm our findings. Landerman v.Commissioner, supra. Also, we note that petitioners have apparently not brought a civil action against A & P for demolition although they maintain the lease prevented demolition and that they suffered a loss as a result. [11] Accordingly, we hold that petitioners are not entitled to deduct their basis in the buildings as a result of the demolition, but rather must amortize the basis over the term of the lease. Decisions will be enteredfor the respondent. Footnotes
1. Hereafter, references to petitioners or Higleys are to Sterling and Frank Highley.↩
*. or one year from date existing tenants are removed from premises.↩
2. Section 13.03 provides in pertinent part that in the event of the termination of the lease due to default of the lessee or by operation of law, the first leasehold mortgagee has the option to obtain a new lease after curing the default.
3. All statutory references are to the Internal Revenue Code of 1954, as in effect during the taxable year in issue.↩
4. See also Yates Motor Co. v. Commissioner, 561 F.2d 15 (6th Cir. 1977), revg. T.C. Memo. 1975-285. (In this case, the taxpayer-lessor entered into an option to lease property on which it had constructed a building built to specifications for use as a car dealership and which had no remaining value. The taxpayer later became required to relocate its dealership and attempted to dispose the property. The taxpayer entered into an option to lease the property on August 27, 1968. This option expired on December 26, 1968. Another option was given to a different firm on March 27, 1969, which was exercised in June 1969. Demolition was commenced in October 1968 and completed in April 1969. The Sixth Circuit found as a fact that the prospect of leasing the property had no influence on his decision to demolish the building, and therefore, the demolition was not made pursuant to the requirements of the lease). 5. Respondent agrees with petitioners that this case should be decided under the regulations existing prior to December 21, 1976. Section 1.165-3(b)(2), Income Tax Regs., as amended December 21, 1976, by T.D. 7447, 1977-1 C.B. 51 provides: If a lessor or lessee of real property demolishes the buildings situated thereon pursuant to a lease or an agreement which resulted in a lease, under which either the lessor was required or the lessee was required or permitted to demolish such buildings, no deduction shall be allowed to the lessor under section 165(a) on account of the demolition of the old buildings. However, the adjusted basis of the demolished buildings, increased by the net cost of demolition or decreased by the net proceeds from demolition, shall be considered as a part of the cost of the lease to be amortized over the remaining term thereof. The new regulation makes clear that the word "requirements" does not mean a mandatory demolition clause and that if a lease permits demolition, and demolition is within the contemplation of the parties at the time the lease was entered, the remaining adjusted basis of the demolished building must be amortized. The amended regulation is in line with this Court's interpretation of the regulation prior to December 21, 1976, in Landerman v. Commissioner, 54 T.C. 1042 (1970), affd. 454 F.2d 338 (7th Cir. 1971), cert. denied 406 U.S. 967, (1972), rehearing denied 409 U.S. 903↩ (1972), infra.
6. Respondent introduced into evidence another copy of the lease which had an additional page setting forth the notarized date of Cipolla's signing the lease for the sole purpose of showing when Cipolla signed the lease. But there is a major difference in the two leases, apparently overlooked by respondent. In the copy of the lease which was offered into evidence as the lease between Cipolla and the Higleys, section 2.01 states that the Original Term is to commence on the day A & P opens for business or one year from date existingtenants are removed from premises. [Emphasis added.] The copy of the lease introduced to establish the date Cipolla signed states in section 2.01 that the Original Term is to commence on the day A & P opens for business or one year from date existing tenants are removed from premises and same are demolished. [Emphasis added.] We do not consider the language in the second lease since it was not introduced into evidence for any purpose other than establishing the date of Cipolla's signing. 7. Respondent does not contest petitioners' contention that New York law applies to determine the rights of the parties under the lease and the interpretation of the lease.↩
8. In this regard, see Pangburn v. Stanley Mark StrandCorp., 24 N.Y.S. 2d 97↩ (Sup. Ct. 1940), in which the court stated that in construing a lease, it is permissible to consider the situation of the parties and the accompanying circumstances at the time the lease was entered into in determining the meaning to be given to the agreement. 9. Respondent points to the fact that all of the plans for South Broad Street Mall called for at least some demolition to provide for additional parking. We do not believe this is relevant since those plans were rejected and do not bear upon Cipolla's and A & P's intent or rights under the lease in question.
10. Petitioners contend that any ambiguity must be strongly construed against Cipolla because Cipolla drew up the lease. Even if we so construe the lease, however, we believe the intent of all the parties was clearly to permit demolition.
11. See also Refrigeration for Science, Inc. v. DeaconRealty Corp., 334 N.Y.S. 2d 418, 70 Misc 2d 500↩ (Sup. Ct. 1972). In construing ambiguous language in a lease, no better evidence of the parties' intention exists than their practical construction of the agreement.